UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 20-126-DCR |
| ) | |
| V. ) | |
| ) | |
| Y. R., a Male Juvenile, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

This matter is pending for consideration of the government's motion to transfer this juvenile proceeding to an adult prosecution pursuant to the Federal Juvenile Delinquency Act ("the Act"), 18 U.S.C. § 5032. Y. R., a male juvenile, is alleged to have violated 18 U.S.C. § 111(a) and (b), which generally prohibit assaulting or impeding an employee of the United States while he or she is engaged in the performance of official duties, causing bodily injury.[1] An evidentiary hearing was held on November 18, 2020, during which the juvenile indicated that he does not object to the motion. *See* 18 U.S.C. § 5032. Nevertheless, the Court will make "findings with regard to each factor" listed in the Act. These findings are detailed below. *Id.*

---

[1] For a transfer motion to be brought, the Act first requires that the juvenile is at least fifteen years or older, and that he or she is "alleged to have committed an act after [his or her] fifteenth birthday which if committed by an adult would be a felony that is a crime of violence." 18 U.S.C. § 5032. The parties do not dispute that these requirements are met.

## I.

Transfer is required if the Court finds that it is "in the interest of justice." 18 U.S.C. § 5032. The interest of justice is informed by the Act's two competing purposes: protecting the public from violent offenders, on the one hand, and "avoid[ing] the stigma of a prior criminal conviction" when "treatment and rehabilitation" would more effectively deter future criminal conduct, on the other. *United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir. 1994). The transfer hearing is intended to adduce evidence sufficient to properly balance these competing purposes and determine whether a transfer is in the interest of justice. *Id.* Further, the statute instructs that there is a "presumption of juvenile treatment" that the government bears the burden of rebutting. *United States v. T.F.F.*, 55 F.3d 1118, 1121 (6th Cir. 1995).

The Act also requires that the Court consider and make findings regarding the following factors:

> (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to those efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems.

*T.F.F.*, 55 F.3d at 1119–20 (citing 18 U.S.C. § 5032). However, there is no requirement that a court "weigh one factor more heavily than another; the weight a court decides to assign each factor is within its discretion." *One Juvenile Male*, 40 F.3d at 845. For example, the "seriousness of the crime obviously can be given more weight than other factors in determining whether there is a 'realistic chance' of rehabilitation." *United States v. Doe*, 871 F.2d 1248, 1255 (5th Cir. 1989).

A.   **The Age and Social Background of the Juvenile**

According to his birth certificate,[2] Y. R. was born on January 6, 1999. [*See* Record No. 23, p. 4.] When he allegedly committed the act in question, Y. R. was barely three months from legal adulthood. This is of some consequence because "the closer a defendant is to eighteen, the greater the presumption that he be treated as an adult." *United States v. A.R.*, 203 F.3d 955, 961 (6th Cir. 2000) (finding no abuse of discretion where a district court transferred a juvenile who turned eighteen during the pendency of the prosecution). As such, this factor weighs in favor of a transfer.

Little information has been presented about Y. R.'s social background. He appears to come from a low-income family of undocumented immigrants. [*See* Record No. 23, p. 5.] He and his purported father have worked at the same slaughterhouse within this district, but his "father" is now in custody. [Record No. 1-1, p. 3] Due to Y. R.'s unique circumstances—he is in the United States allegedly unlawfully, and has only been here for a short time—the government did not present any additional evidence regarding his social background. The Court finds that the defendant's age weighs heavily in favor of a transfer, and nothing in his social background would undermine that conclusion. *See A.R.*, 203 F.3d at 960 (finding no abuse of discretion where a district court simply concluded that "little information" about the juvenile's social background existed).

B.   **The Nature of the Alleged Offense**

Y. R. is alleged to have forcibly sexually assaulted a female government employee during the course of her official duties. [Record No. 1] The Complaint details a pattern of

---

[2]    This qualifier is necessary because Y. R. has created doubts about his true age, as explained in more detail below.

harassment toward the victim that lasted nearly a month. [Record No. 1-1, p. 3] Throughout this period, Y. R. would reportedly grab the victim, "pull [her] close to him," and attempt to kiss her. [*Id.*] On the date of the incident, Y. R. allegedly said to the victim "[m]e, you, sex today," and forced his left hand up her shirt while using his right hand to unzip her pants. [*Id.* at p. 4] When Y. R. attempted to drag the victim out of the sight of others, she was able to drop to the floor and escape his grasp. [*Id.*] The victim claims to have vehemently resisted each of these attempts.

"For purposes of the transfer hearing, a court may assume the juvenile committed the alleged offenses." *One Juvenile Male*, 40 F.3d at 845. This conduct is serious and heinous. The Court shudders to imagine what the consequences of Y. R.'s conduct may have been, had the victim not escaped his intentions. As such, this factor weighs heavily in favor of transfer. *See One Juvenile Male*, 40 F.3d at 845 (finding no abuse of discretion where "[t]he factor that influenced the court most was the heinous nature of the alleged crimes").

        **C.**     **The Extent and Nature of the Juvenile's Prior Delinquency Record**

The United States argues "it is apparent from the circumstances of Y. R.'s arrest and background that there is evidence of various other crimes and unlawful acts." [Record No. 23, p. 6] The government relies on Y. R.'s presence in the United States in violation of law, as well as his attempts to fraudulently conceal his true age to gain employment and avoid conviction as an adult. [*Id.*] The government concedes, however, that it is "not aware of any substantial prior record of juvenile delinquency for Y. R., although investigation has revealed prior traffic offenses." [*See Id.*; *see also* Record No. 25.]

While these facts may support a conclusion to transfer the matter to adult prosecution, they do not heavily point in that direction. Y. R.'s unlawful presence may or may not have

been volitional, and it is not known whether he understood that lying to obtain employment was a federal crime. Lying to law enforcement is a serious offense, but it weighs more heavily with respect to the next factor, as discussed below. During the hearing, the government presented no additional evidence of prior criminal history, but counsel reiterated that Y. R. engaged in a "pattern of multiple forms of criminal activity" for the short time that he has been in the United States. This factor weighs slightly in favor of a transfer.

### D. The Juvenile's Present Intellectual Development and Psychological Maturity

The government relies on the same facts outlined above to argue that this factor weighs in favor of a transfer. [Record No. 23, p. 6] Y. R.'s actions indicate that he has a propensity for criminality and the intellectual means to act on it. He allegedly lied to law enforcement officers about his age, then reversed course when he was advised of the consequences of being prosecuted as an adult. [*Id.* at p. 5] He allegedly harassed the victim when she was alone, but not when she was accompanied by a supervisor. [Record No. 1-1, p. 3] Further, it appears that he strategically preyed on the victim when his chances of being caught were lower. In short, the information presented thus far indicates that Y. R. has demonstrated intellectual functioning sufficient to understand when a course of conduct is more or less likely to expose him to liability. In light of his repeated choices to choose the path of illegality, this factor weighs in favor of a transfer. Further, there is no evidence suggesting that Y. R. lacks the psychological maturity to be proceeded against as an adult

### E. Past Treatment Efforts and the Availability of Future Treatment

The Court likely has the widest latitude on these final two factors. "Although the [Act] requires the Court to consider *available* juvenile treatment options, it is not required to conduct

a nationwide search for such programs." *T.F.F.*, 55 F.3d at 1121 (emphasis added). The overriding concern is whether the available treatment options would provide a realistic chance of rehabilitation, were the defendant treated as a juvenile. *Doe*, 871 F.2d at 1255.

There is no evidence of past treatment efforts for Y. R., but if efforts have been made, it is evident they have failed, and would not weigh against a transfer. *See A.R.*, 203 F.3d at 960. Further, even if future treatment or programs are available, the government argued that their efficacy would be blunted by Y. R.'s proximity to adulthood. *See id.* And because he is on the cusp of adulthood, any chance of rehabilitation through juvenile treatment is slim. Finally, Y. R. does not have a community or family support system available to take responsibility for his rehabilitative efforts. Thus, neither of these remaining factors favor treating Y. R. as a juvenile.

## II.

Based on the information outlined above, the Court concludes that Y. R.'s proximity to adulthood and the nature of the offense(s) strongly favor transfer to adult proceedings. The undersigned agrees with the United States that these factors outweigh any that may counsel against a transfer. An attempted violent sexual assault by a seventeen-year-old juvenile is an offense serious enough to necessitate transfer to adult prosecution. And the little time that Y. R. would be eligible for juvenile rehabilitation is insufficient to ensure that the interests of justice would be served. Finally, the limited evidence regarding other factors for the Court's consideration do not undermine that conclusion. Accordingly, it is hereby

**ORDERED** that the United States' motion to transfer this matter to adult prosecution [Record No. 23] is **GRANTED**.

Dated: November 18, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky